**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

```
- - - - - - - - - - - - - - - x
IN RE:                        :
                              :
COMMUNITY HEALTH SOLUTIONS     : Case No. 06-01215-8C1
OF AMERICA, LLC                : Chapter 11
              Debtor          :
- - - - - - - - - - - - - - - x
LARRY HYMAN, TRUSTEE,         :
              Plaintiff :
          vs                  : Adversary No.06-328
COMMON PAYMASTER CORPORATION   :
MIRABILIS VENTURES, INC.,     :
              Defendant :
- - - - - - - - - - - - - - - x U.S. Courthouse
                                801 N. Florida Avenue
                                Tampa, Florida
                                August 29, 2006
                                10:13 a.m.
```

**HEARING**

1) Pretrial Conference

2) Expedited Motion to Dismiss Adversary Proceeding by
Mirabilis Ventures, Inc.

3) Motion to Dismiss Complaint by Common Paymaster

**B E F O R E:  THE HONORABLE CATHERINE PEEK MCEWEN**
**Bankruptcy Judge**

**JOHNSON TRANSCRIPTION SERVICE**
**7702 Lake Cypress Drive**
**Odessa, Florida  33556**
**(813) 920-1466**

APPEARANCES:

For Mirabilis Ventures, Inc.:     THOMAS LASH, Esquire
JAMES CARRAWAY, Esquire
Saxon Gilmore Carraway
 Gibbons Lash & Wilcox
201 East Kennedy Boulevard
Suite 600
Tampa, Florida 33602
813-314-4500

For Larry Hyman:     JOHN ANTHONY, Esquire
CHERYL THOMPSON, Esquire
Gray Robinson
201 North Franklin Street
Suite 2200
Tampa, Florida  33602
813-273-5000

For Common Paymaster:     MARK BERNET, Esquire
Buchanan, Ingersoll
Professional Corp.
401 East Jackson Street
Suite 2500
Tampa, Florida  33602
813-222-8180

Also Present:     Larry Hyman, Trustee

**P R O C E E D I N G S**

1
2     COURTROOM DEPUTY:  Community Health Solutions of

3     America, Case No. 06-01215, and Adversary 06-00328.

4          THE COURT:  The Court will take appearances.

5          MR. ANTHONY:  Good morning, Your Honor, John

6     Anthony on behalf of Larry Hyman, the Trustee.  We note

7     that the Trustee is also present as well as Cheryl

8     Thompson.

9          THE COURT:  Okay.  Thank you.

10          MR. BERNET:  Mark Bernet, Your Honor, on behalf of

11     Common Paymaster Corporation.

12          MR. LASH:  Good morning, Your Honor, Tom Lash with

13     regard to both the main case and the adversary

14     representing Mirabilis Ventures, Inc., and Pacific-

15     Atlantic Capital Corporation.  And my partner Mr.

16     Carraway is lead counsel in the adversary 06-328, I

17     believe it is, is here also.

18          THE COURT:  Okay.  The last time everyone was

19     before us, y'all were talking about working something

20     out.  Did something get worked out?

21          MR. ANTHONY:  Your Honor, I guess this is a matter

22     of perspective.  Mr. Warren, Mr. Bernet, and I have been

23     working together to explore matters in which this

24     adversary proceeding might be mooted, and we're not where

25     we need to be.

In the meantime, the Debtor has lost the Florida Healthy Kids contract. The significance of that is great. And although there are good things that we could say, they are decidedly more subjective than the objective fact that we lost our biggest contract.

With all that having been said --

THE COURT: That's not a big surprise.

MR. ANTHONY: No. It was foreseeable.

THE COURT: It was being shopped; right?

MR. ANTHONY: Exactly. Your Honor, anybody who would have prepared the Schedules and Statement of Affairs as this case was being begun could have anticipated that. We've certainly done our best in the last three months to try to avoid this event, but it has occurred, and it will not turn around.

That presents a bit more urgency during the next several days, and for that reason what we -- and I believe Mr. Bernet can confirm this part of our request, we would like to be back sometime toward the end of next week. Thursday would be particularly optimal for our schedules although we do not know your own. And by that time, we would like to either have an amended complaint, which would moot the motions to dismiss that are pending before Your Honor, or -- and a number of other pleadings can be filed during the interim as well. Or we can come

1    back with what I would call for lack of a better

2    description a "joint Plan" or "a consensual Plan."

3         THE COURT:  By next Thursday?

4         MR. ANTHONY:  I think as a practical matter the

5    adversary proceeding as it is currently presented is not

6    a proper vessel for the resolution of any of the Amodeo

7    disputes.  It either needs to be amended -- and I regret

8    this.  Your Honor, we tried to do this surgically with

9    specific adversary proceedings.  But that has not been

10   helpful to the process, and I will admit that.  It was my

11   idea and it failed.

12        So we're filing a large complaint that will moot

13   the pending motions to dismiss.  And then there -- we

14   have every hope that Mr. Bernet, Mr. Warren, and I, and

15   the Trustee will be able to put our best foot forward,

16   and that would include a very ambitious, Your Honor --

17   and I don't know the fact that the situation is so urgent

18   doesn't mean that this is more feasible, but we believe

19   that by next Thursday there should be a Plan, a

20   Disclosure Statement, and an amount of money in Mr.

21   Warren's trust account that will validate the feasibility

22   of whatever is filed.

23        If that is not the case, then we think that -- the

24   -- an adversary proceeding will take a lot of time.  We

25   think that a Plan that Mr. Hyman would propose would be

1    predicated upon litigation not resolution.  And as a

2    practical matter with the largest contract gone, we're at

3    the point where we really do have a crossroads.  It's

4    definitive.  This isn't a point where you could just put

5    more money into the company and have it, you know,

6    maintained for some real purpose.  It's either going to

7    be --

8         THE COURT:  Don't you have the other contract?

9         MR. ANTHONY:  -- picked up or not.  We have another

10   contract.  We have some prospects.  But as a practical

11   matter, to keep the human resources, the technology, the

12   facilities up and running for that without the ability to

13   find a way out that is consensual, you know, that's a

14   problem.  To give some perspective, there have been since

15   mid May these same conversations and these same exchanges

16   of badinage as far as claims and, you know, things of

17   that nature.

18        THE COURT:  What was that word?  What was that

19   word?

20        MR. ANTHONY:  B-a-d-i-n-a-g-e.

21        THE COURT:  Thank you.

22        MR. ANTHONY:  I believe Miss Johnson called last

23   week about another word and I can't remember which it

24   was.

25        THE COURT:  Obstruse.

1        MR. ANTHONY:  Obviously Your Honor has heard some

2  snappy repartee between Mr. Lash and myself.  Obviously

3  there are claims that have not been asserted.  One of the

4  main reasons was to create an atmosphere of calm for --

5        THE COURT:  Okay.  Let's do this --

6        MR. ANTHONY:  And it hasn't worked.

7        THE COURT:  I want to -- let's do this:  Mr.

8  Bernet --

9        MR. BERNET:  Yes, ma'am?

10        THE COURT:  He said that you were agreeable to

11  having all this moved over until Thursday.

12        MR. BERNET:  Yeah.  I stood up, Your Honor,

13  respectfully to say, yes, we agreed to move this over to

14  Thursday.

15        THE COURT:  Okay.

16        MR. BERNET:  I certainly did not expect that little

17  soliloquy.

18        THE COURT:  That's okay.

19        MR. LASH:  Your Honor, if I can have a moment when

20  the Court feels it's appropriate?

21        THE COURT:  Okay.  I think what we should do is,

22  everyone's in agreement, right, Mr. Carraway, you're lead

23  counsel in the adversary?

24        MR. CARRAWAY:  Yes, ma'am.

25        THE COURT:  Let's do this:  We have Thursday

1      morning, do we not?

2              COURTROOM DEPUTY:  Yes.

3              THE COURT:  That's not the day that I'm going over

4      to the District Court meeting, September 7th?

5              COURTROOM DEPUTY:  I don't have that.

6              THE COURT:  Okay.  All right.  We have all morning

7      on the 7th.  And what we can do is we'll set this for a

8      status conference in the case and for a continued hearing

9      on the expedited motion to dismiss by Mirabilis and the

10     motion to dismiss by Common Paymaster and a pretrial

11     conference.  So everything that's on today we continue

12     over until September the 7th at 9:30.

13             And we'll also notice a status conference on the

14     case.  And I'd be interested in knowing whether the

15     Debtor intends to sell the business or just what the game

16     plan is going forward if there's not a Plan in place at

17     that time.

18             MR. ANTHONY:  We should have that for Your Honor.

19     I think that that's incumbent upon us now by

20     circumstances.

21             THE COURT:  Okay.  Now, the other thing is

22     housekeeping with respect to the adversary.  You've got a

23     motion for the entry of a default final judgment in

24     another adversary that names a name that is named in this

25     adversary; okay?  And I'm not sure that I can enter a

1   final judgment just based on unanswered allegations.  I

2   think our local rule requires an affidavit that the

3   merits are what the merits are, somebody is averring.

4   that.  And I don't have that yet.

5       MR. ANTHONY:  Your Honor, I may be wrong.  I

6   thought that that was a verified complaint.  But we're of

7   the mind --

8       THE COURT:  It wasn't.

9       MR. ANTHONY:  I thought that it was.  But we're of

10  a mind to have no action in that particular adversary

11  proceeding until we're back before Your Honor.

12      THE COURT:  Okay.  So you don't want me to enter

13  the final judgment that was submitted?

14      MR. ANTHONY:  Correct.  And the reason is because I

15  believe that that might, although very meritorious, I

16  believe that that might compromise the settlement

17  initiative of Mr. Warren, and so he's asked for that.  I

18  don't think that --

19      THE COURT:  We'll hold it, that's okay.  And then

20  I'll look and see, I didn't catch it, that it was

21  verified.  But Miss Thompson is saying yes, it was, so --

22  so that makes me more comfortable.  But I'm glad I

23  brought it up because now I know what I should be doing

24  with it, which is sitting on it.  Okay.

25      MR. ANTHONY:  Very well.

1        THE COURT:  And, Mr. Lash, do you want to say

2    something?

3        MR. BERNET:  Actually, Your Honor, just one quick

4    second.

5        I'm sorry, Mr. Lash.

6        I take it that the discovery stay that was in

7    effect would also continue through next Thursday?

8        THE COURT:  If you want it to I'll --

9        MR. BERNET:  I had thought it was.  I had thought

10   that the discovery stay would also continue --

11       THE COURT:  If you want.  We hadn't -- you know, we

12   had said it would be up --

13       MR. ANTHONY:  Right.

14       THE COURT:  -- yesterday -- or today.

15       MR. BERNET:  Today.

16       MR. ANTHONY:  Your Honor, we understood, and we

17   might have gotten it wrong, but we understood that no

18   papers would be filed during the week.  In fact papers

19   were filed within the week, and it was the report of Mr.

20   Oscher.

21       THE COURT:  Something everybody's been waiting for

22   with bated breath that I've heard about for weeks.

23       MR. ANTHONY:  Right.  And, Your Honor --

24       THE COURT:  I haven't read it.

25       MR. ANTHONY:  Well, don't bother.  Your Honor, the

truth of the matter is that we don't feel that the spirit of that abeyance was really adhered to, and we think that it would be better for -- given the compromised position of the Debtor right now to not have any stay of any kind except for with respect to that adversary proceeding pertaining to substantive consolidation.  Mr. -- Mr. --

THE COURT:  So you're saying you do want discovery to be open now?

MR. ANTHONY:  Discovery, pleadings, whatever.  I think that, for example, if Mr. Bernet wants to re-notice the Mediforce 2004 exam, he can go ahead and do it. We're planning to file the amended complaint that we believe moots the motion to dismiss or the motions to dismiss that are pending in this adversary proceeding.  I don't think that it was helpful to not file pleadings and to serve discovery, that would have been helpful in enabling everybody to understand the facts of this case. So --

THE COURT:  That's one reason why two hearings ago when Mr. Bernet knew something that you evidently didn't know about the charges that were built into or allegedly built into his client's charges, I urged you to sit down and share.

MR. ANTHONY:  Yeah.  Well, and just as you were doing that, he was handing me discovery --

1          THE COURT:  That's fine.

2          MR. ANTHONY:  -- and that's -- and we've responded

3     to that.  So the truth of the matter is we may as well

4     just go ahead and continue the case.  And with all --

5          THE COURT:  You're saying that it will be helpful

6     to have stuff filed between now and the Thursday hearing?

7          MR. ANTHONY:  There will be -- and we can obviously

8     hold up or withdraw things.  But I think that the truth

9     of the matter is it's up to Mr. Warren and Mr. Bernet,

10    Mr. Hyman and I to get a Plan and Disclosure Statement

11    together --

12         THE COURT:  But how do you do that when -- if

13    you're going to be flurrying papers at each other?  I

14    remember there was a time that you said that you weren't

15    able -- your firm wasn't able to address something

16    because you were dealing with other emergencies and

17    wouldn't it be distracting to be filing things.

18         MR. ANTHONY:  Your Honor, it's very distracting to

19    read this report and have to go over a lot of this

20    information.  I think that the problem is is that in the

21    meantime, the biggest benefit, candidly, to a stay was to

22    preclude Florida Healthy Kids and anybody watching these

23    proceedings from seeing the problem that we have tried to

24    not highlight.

25         THE COURT:  Okay.  So you're saying --

1          MR. ANTHONY:  That is no longer a problem.

2          THE COURT:  You're saying that things that are

3     disclosed on the public record would have a chilling

4     effect on the Debtor's ability to sell its assets or

5     reorganize?

6          MR. ANTHONY:  They had a chilling effect -- they

7     would have had a chilling effect on Florida Healthy Kids.

8     What has happened in the meantime is we have plenty of

9     other chilling effects going on right now.  The pendency

10    of this bankruptcy case has been the problem.

11         THE COURT:  Well, sure.  We mentioned that.  What

12    state agency in their right mind is going to award a

13    contract to a Debtor that's being operated by a Chapter

14    11 trustee?

15         MR. ANTHONY:  Go figure.  And the truth of the

16    matter is, Your Honor, if they want to serve discovery,

17    we're up to it.  We'll be filing a good-size Chapter 11

18    tomorrow.  We're in our fiscal year end.  We've got all

19    types of things to do.  But we can cover this.

20         THE COURT:  Where are you filing the Chapter 11?

21         MR. ANTHONY:  In Tampa.

22         THE COURT:  Oh.

23         MR. ANTHONY:  So -- but having said that, the truth

24    of the matter is that we can do this.  I would prefer not

25    to, but I think it's more problematic for us to say we're

1    not going to file things and then get things.  So we've

2    had things stored up for a while, and we think it would

3    be helpful -- it would even be helpful to the resolution

4    -- potential resolution, and if it doesn't resolve,

5    that's fine.

6         THE COURT:  You think so?  You think that by

7    serving a piece of paper, that's going to produce

8    constructive talk?

9         MR. ANTHONY:  Yes, I do at this point.  We haven't

10   -- we have -- we've been in this case since mid May.  We

11   have not filed any more than the most surgical pleadings

12   intended to solve surgical problems.  That has been

13   totally misunderstood, and --

14        THE COURT:  Why haven't y'all sought to have a

15   mediator?

16        MR. ANTHONY:  Your Honor, I think that that is a

17   great idea.

18        THE COURT:  Then go get one and pass your

19   information back and forth.  If you want to put a land

20   mine on them, do it in that forum, in a negotiated --

21   well, with a neutral present -- setting, because it

22   doesn't make sense for people to spend a lot of money

23   putting a lot of papers out to each other at a time when

24   you're trying to file a Chapter 11 and they want to

25   settle -- apparently want to settle, I don't know.

1      MR. ANTHONY:  The two sides had each raised the

2   possibility of Tim Corcoran or Tom Baynes mediating this.

3   And I think what we decided yesterday is that given the

4   time exigencies and the fact that Mr. Warren and Mr.

5   Hyman are very intelligent guys -- they both know the

6   facts of the case.  Jeff has been a quick study on this.

7   Mark's been -- Mr. Bernet has been helpful -- that we're

8   going to have a pretty good understanding of the facts.

9   The question is, you know, what are we going to do next?

10  And after three months, four months --

11      THE COURT:  That's my point.  If you serve

12  something -- if you serve something under the ten-day

13  response rule, you're still not going to have any

14  responses back by Thursday.  So if you'd like to send

15  them a courtesy copy of what you might file, do it.  But

16  I don't know that we need to be having people feeling

17  like they have to respond to something that you put in

18  the record or, likewise, that they put in the record,

19  like Oscher's report.  Why don't we keep everything at

20  the level of being off the radar screen until Thursday?

21      MR. BERNET:  One of the most difficult things in

22  cases like this where emotions are running high, for

23  lawyers -- Your Honor, I know has had this experience

24  when you were in private practice.  For the attorney, the

25  trick frequently is, to manage your client, is to have

1    your client focus on what makes the best economic sense,

2    what's in the best interest of the various

3    constituencies.

4        Bankruptcy is very difficult.  Everybody always

5    wants the biggest piece of limited resources.  And

6    emotions sometimes get high even in Chapter 11 cases

7    where there are very good counsel.  And I think there are

8    very good counsel on both sides of the table here in this

9    case.

10        THE COURT:  Have y'all thought about Jay Cohen as a

11    mediator?

12        MR. BERNET:  But yesterday the thought was that, in

13    terms of a mediation, we want to get something

14    accomplished by Thursday of next week.  If we have to get

15    a new mediator involved, particularly with the weekend --

16    holiday weekend and all, that's a big job to have to try

17    to bring somebody up to speed on a difficult industry.

18    And there's some very complicated issues in a very unique

19    industry -- not very unique -- a unique industry here.

20    They're hard to grasp.  We didn't think, and I thought

21    the decision was yesterday, that trying to bring somebody

22    up to speed on that short term was not going to be

23    useful.

24        THE COURT:  Well, you underestimate both of the

25    names that you said or that he said, Mr. Anthony said,

and you underestimate the name that I just put out.

MR. BERNET:  Judge Corcoran was my mentor for three years at Carlton Fields.  He is brilliant man, I know. Judge Baynes, I've had the privilege of practicing before, so I know him.  And Mr. Cohen, as well, is also a brilliant man.  But we didn't think that that was going to be useful.

There was resistance from the other parties who need to be involved in the settlement, as well, to a mediator.  And again, I think cost, timing, whatnot.  I honestly thought we made some good progress in our discussions yesterday.

MR. LASH:  And, Your Honor, not to go to every point, and hopefully we don't have to, but --

THE COURT:  You know that.  I see it every single hearing we have.

MR. LASH:  I know.  That's why I sat here or stood here silently.  I was not at the meetings yesterday because -- in answer to the Court's question about the -- about the, not the feasibility of a Plan but the feasibility of the timing of Plan because I've been writing, and as things evolve, re-writing amended Plans according to what people have said and Disclosure Statements.  So that has been in process and continues to be in process.  And in fact, Mr. Ellis is not here

because he's working on amending the Disclosure Statement right now.

And my understanding from what happened yesterday was, despite Mr. Anthony's evident humor over this, my understanding from yesterday evening's meetings was that the meetings were productive although they didn't reach a resolution.

I think with regard to the issue of Mr. Anthony filing an amended complaint or something of that nature, if there's a standstill in the adversary proceeding, I don't know how you can file an amended complaint. If we're not going to have a standstill, obviously he can do that.

With regard to the filing of the Oscher report, as the Court correctly pointed out, everybody has harangued every time that the Oscher report wasn't out. Now when it is out, everybody's mad that it is out.

THE COURT: I think that the main concern was it's put on the public record. And it could be delivered without it being on the public record, but it is what it is. If y'all want to do a consensual motion to have the Court seal that, I can do that.

MR. LASH: At this point in time, I don't have authority from my client to have a position on it, Your Honor.

THE COURT:  I'm just throwing that out.  That's something we can talk about at the status conference.

MR. LASH:  And that brings me to the last point, which is I think actually the 2004 exam, leaving the other points aside.  The 2004 exam that Mr. Anthony was referencing was actually filed by my client, by Mirabilis.  And I would assume that nothing is going to happen with that during this interim period of time except that it would be on for hearing I would hope -- next Thursday is it that we're talking about?

THE COURT:  Well, they haven't had an opportunity, I don't think, to file an objection.  I heard that there would be an objection.

MR. LASH:  I thought they already did -- I'm sorry.

THE COURT:  Let me look.

MR. LASH:  Did they already -- I thought they already filed an objection.  I know one had been voiced by --

MR. ANTHONY:  Your Honor, I believe we had drafted it and it had come out the morning of that hearing.  I -- obviously there's nothing funny about the status of this case.  It is rather amusing that a Plan is being drafted by Mirabilis because that's -- that's -- we're looking to Mr. Warren to harmonize some things that I think he understands, and hopefully something good will come from

1    that.

2        I want to underscore, I think Mr. Bernet is

3    correct.  Yesterday was a half -- or conversations are a

4    half-full-half-empty sort of a perspective thing.  But

5    the truth of the matter is we really believe that there

6    are some hard deadlines tied into the end of next week

7    relating to funding operations, funding payroll if the

8    company is not going to actually do something going

9    forward.

10       And I've spoken with our team at this point, and

11   we're happy to go ahead with an actual moratorium on all

12   filings between all Mirabilis-type entities, in other

13   words, Mirabilis, Mr. Amodeo, Common Paymaster, through

14   next Thursday unless they are consensual.  For example, a

15   joint Plan, a joint Disclosure Statement, and any other

16   joint pleading of that kind.  And hopefully something

17   good can come from that.  But --

18       THE COURT:  Now, if there's something that the

19   Debtor is supposed to do, like a monthly operating

20   report, I'm not going to abate that.  The standard stuff

21   needs to be filed because there are other creditors in

22   this case besides the folks who are represented here in

23   this room.

24       MR. ANTHONY:  Your Honor, the trick is to cast a

25   net that covers whatever entity might, you know, fall

1    within the Saxon Gilmore firm, the Bush Ross firm, the

2    Buchanan Ingersoll firm, and any other firm that might

3    hereafter represent an Amodeo entity in this case.

4         But obviously we just got a notice of default from

5    Imperial with respect to the insurance situation

6    yesterday.  We think we'll cure it, but the intent is not

7    to have this sort of an informal stay impact other

8    parties in interest.

9         THE COURT:  You mean if Imperial wants to file a

10   motion for relief from the automatic stay or something

11   like that --

12        MR. ANTHONY:  Go for it.  I mean, I think that we

13   have to deal with the other realities of the case.  But

14   the picture that we're here on, and I guess the

15   platform --

16        THE COURT:  What language do you suggest should be

17   in an order abating filings in the case and in the

18   adversary proceeding other than the ones that come up in

19   the ordinary course that you're required to do, or that

20   affect creditors other than those represented in this

21   room and by Mr. Warren?

22        MR. ANTHONY:  Notwithstanding the right of parties

23   in interest to be heard pursuant to Bankruptcy Code

24   Section 1109 and other applicable law, it is the

25   intention of the parties and it is the order of this

1    Court that neither the Trustee nor its counsel nor any

2    Mirabilis entity, affiliate, principal or agent shall

3    file any motion that is not -- that does not have the

4    advance consent or joinder of the opposite party.

5         THE COURT:  And by using the term "Mirabilis and

6    its affiliates," do you intend that that includes Common

7    Paymaster?

8         MR. ANTHONY:  I'm intending in the ambit of that to

9    include Frank Amodeo, whatever entities Mr. Warren

10   appeared for, and whatever entities the other two law

11   firms have appeared for.

12        THE COURT:  How does that sound, gentlemen, until

13   after Thursday's hearing?

14        MR. BERNET:  Theoretically I could see some problem

15   with that, but in practical application, I don't.

16        THE COURT:  Okay.  I think we all know what's

17   intended.

18        MR. BERNET:  Yes.

19        THE COURT:  Don't be filing things on the Court

20   record.  You can ship papers to each other if you want

21   with land mines in them or whatever you want to do, but

22   don't throw anything into the record until after

23   Thursday.

24        MR. LASH:  So that we're clear, Your Honor, I think

25   that Mr. Anthony's suggested language stated motion.  The

only thing that was filed with regard to the Oscher

report, of course, was a notice of filing and the filing

of it. There will be a next phase to the Oscher report

that should come out this week, and I assume that the

request is that that be included and not be filed as well

during this period of time?

THE COURT: That's correct. You can share it with

them under the radar screen of the Court record.

MR. ANTHONY: And that was the intent, and we've

met with Mr. Oscher.

THE COURT: And in the meantime, if you wish to

have this thing sealed and you come back to Court with an

agreement on that, then we can have Mr. Oscher's report

sealed if you file the local rule and give cause.

MR. ANTHONY: Immediately before the hearing, Miss

Thompson filed a motion to strike it, and maybe we can --

THE COURT: I've seen it.

MR. ANTHONY: Okay. Maybe we can produce a

consensual order in the meantime or a motion.

THE COURT: Striking it does nothing but say that

it's stricken --

MR. ANTHONY: Stricken but not --

THE COURT: -- but it doesn't go away from the

record.

MR. ANTHONY: I hear ya. Well, let us put our

```
 1    heads together and maybe we can find some way to put the
 2    toothpaste back in the tube.
 3         THE COURT:  Okay.  And I hear some resistance to
 4    requiring mediation.
 5         MR. LASH:  I did want to say, Your Honor, with
 6    regard to mediation that our client has approved Judge
 7    Baynes as a mediator should this come to the point of
 8    mediation.  Having said that, it is certainly -- there's
 9    a consensus that the time factors associated with this at
10    this point in time and the fact that there was progress
11    yesterday at the meeting, that it would be better at this
12    point to continue the discussions that have been taking
13    place with regard to Mr. Warren and his client, Tenshi.
14    I think Mirabilis is included in that even though I
15    wasn't there.  It comes under that umbrella.
16         THE COURT:  Are you all going to meet this
17    afternoon?
18         MR. LASH:  I don't know whether it's this afternoon
19    or tomorrow.
20         MR. BERNET:  I don't think there's a planned
21    meeting this afternoon, Your Honor.  Based on the meeting
22    yesterday, there's some work the attorneys need to do
23    with their clients.  We don't have a next-scheduled
24    meeting, but I expect we will have a next-scheduled
25    meeting very shortly.
```

1          THE COURT:  Okay.  Why don't you -- whether you

2     pick Judge Corcoran, Judge Baynes, Jay Cohen, why don't

3     you at least try to clear some time with those gentlemen

4     on say Tuesday or Wednesday if there are any last issues

5     that you just can't get over and you need somebody to

6     bang some heads together?

7          MR. LASH:  Good idea, Your Honor.

8          MR. ANTHONY:  We'll do that.  We had pre-approved

9     Tim Corcoran.

10          THE COURT:  I know that Judge Baynes -- Judge

11     Baynes loves to mediate.  And I don't know what his

12     calendar looks like.  I know Judge Corcoran enjoys making

13     money too, and I know Jay Cohen is a very, very, good,

14     skilled mediator in situations where people just can't

15     get together.  And --

16          MR. BERNET:  Was it Judge Corcoran who had the

17     Government Risk Insurance Trust case?

18          THE COURT:  Beats me.  I wasn't involved in that

19     one.

20          MR. BERNET:  GRIT?  I believe it was.

21          THE COURT:  You could probably search it.

22          MR. LASH:  Our client, Mirabilis, will certainly

23     support doing that, Your Honor.

24          THE COURT:  So just clear something because you can

25     meet and meet and meet and twirl around and all this, but

1  really I'm a big believer in mediation because once you

2  get in a room and you've got somebody strong enough to

3  keep people in there, things happen.  But you have to go

4  through that process.  It's tedious, sometimes it's hot.

5      I was locked in an un-air conditioned room at Bob

6  Glenn's office until 2 a.m. one time with our crowd.  And

7  the other crowd was locked in the main conference room

8  which had a liquor cabinet.

9      MR. ANTHONY:  Well, that was better.

10      THE COURT:  And so one group was hot and tired and

11  mad, and the other group was -- had some adult beverages

12  and was --

13      MR. ANTHONY:  I want to know who the mediator was

14  who put you in that room because --

15      THE COURT:  Bob Glenn.

16      MR. ANTHONY:  Yeah, we don't want to run that risk

17  of being in that room.

18      THE COURT:  But the point is, it was a horrendous,

19  horrendous emotional -- it was one of the worst things I

20  ever saw in my life, and it settled that night at about

21  2 a.m.  So there you have it.

22      I'll adjourn this hearing now, and the Court will

23  send out a notice of a status conference in the case.

24  Somebody probably ought to cue in Terry Boatner about

25  what's going on.  If she needs to be involved in

discussions, you might want to preview some things for her.

And then we'll also -- can we just continue this in open court, all the pretrial conference?  No, you need an order about the abatement, don't you?

Okay.  So you give me an order in the adversary proceeding and in the case that talks about the abatement.  And in the one that deals with the adversary proceeding, include the fact that we continued all these things over to September 7th at 9:30.  Okay?

MR. ANTHONY:  Very well.  Thank you, Your Honor.

MR. LASH:  And where discovery is stayed currently as well?

THE COURT:  Everything.  Don't serve discovery requests.  You may give courtesy copies of things you might intend to serve once this moratorium lapses, which would be at the end of the day on Thursday -- or at noon on Thursday.

MR. BERNET:  And responses which otherwise would come due will be pushed off through --

THE COURT:  The same as before.

MR. LASH:  And I'm sure Mr. Anthony will run the order past everyone?

MR. ANTHONY:  Absolutely.

MR. LASH:  Thank you very much, Your Honor.

1          THE COURT:  You guys are making progress.  I can

2   see it.

3          MR. BERNET:  I think so.

4          THE COURT:  So come back with something meaningful

5   on Thursday.

6          MR. ANTHONY:  Very well.

7          THE COURT:  Or --

8          MR. ANTHONY:  We will.

9          THE COURT:  -- I'll start making some rulings here.

10  Thank you, all.

11         MR. LASH:  Thank you, Your Honor.

12         MR. ANTHONY:  Thank you, Your Honor.

13             (Hearing concluded at 10:43 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

STATE OF FLORIDA          )

COUNTY OF HILLSBOROUGH    )

I, MARILYN L. TAYLOR , Official Court Reporter and Notary Public, do hereby certify:

That the foregoing hearing was reported by me at that time and place therein designated; and that the foregoing pages were transcribed by me and constitute a true and correct copy of the stenomask report.

I FURTHER CERTIFY that I am not a relative, employee, attorney or counsel of the parties, nor a relative or employee of such attorney or counsel, nor financially interested in the foregoing action.

BE IT KNOWN that I shall not attest to the accuracy nor content of any other than the original transcription herein set forth, excepting copies that are made by me by whatever means, containing my original signature only.

WITNESS my hand and seal this 23rd day of January, 2007, in the City of Tampa, Hillsborough County, Florida.

Marilyn L. Taylor, CVR
Certified Verbatim Reporter
Notary Commission No.DD593730
Expires: October 25, 2010